In re William Chalmers DORN and Jean Smith Dorn, Debtors.

No. 81–01665.

United States Bankruptcy Court, D. South Carolina.

Dec. 23, 1983.

Alice S. Moore and Fred A. Gertz, Columbia, S.C., for debtors.

Lincoln C. Jenkins, III, Columbia, S.C., for FHA.

## MEMORANDUM and ORDER

RUFUS W. REYNOLDS, Bankruptcy Judge.

In May of 1979 William C. Dorn borrowed $15,640.00 from the Farmers Home Administration (hereinafter "FmHA"), at an interest rate of 3 percent per year. This loan was to be repaid over seven years. The debt was secured by a mortgage on real property and a security interest in 15 items of farm equipment. Subsequently, in 1980, Mr. Dorn borrowed an additional $32,000.00 from FmHA. This loan was to be repaid in two installments over a one year period and has been designated by FmHA as an "operational loan." This second loan carried an interest rate of 10.5 percent per year. It was secured by a security interest in farm equipment.

In 1980, Mr. Dorn made several payments to FmHA. A payment of $10,886.29 from the sale of wheat and $600.00 from the sale of a Hardee sprayer were credited to the 1979 loan.

In November of 1981, William C. Dorn and Jean S. Dorn filed bankruptcy. Shortly thereafter, FmHA filed a claim, unsubstantiated by any documentation, showing a total balance due on the combined loans in excess of $36,000.00. On February 12, 1982, FmHA produced a Certified Statement of Account which showed a balance due on the 1979 loan of $4,557.29 in principal and

$87.28 in interest. The balance due on the 1980 loan was $31,544.64 in principal and $925.60 in interest. This Statement of Account was submitted to the Dorns' attorney and to the Trustee. Based upon the information contained in the Statement of Account, the Dorns and the Court formulated a Chapter 13 Bankruptcy Plan which was approved on May 24, 1982.

Pursuant to the Bankruptcy Plan the Dorns were to sell their farm equipment and real property, except their residence, and pay the Trustee $55,000.00. Proceeds from the property were to be applied first to the secured creditors and then to the Trustee's fund. Implicit in this plan was the belief of the parties that there was a certain amount of equity on the various properties. Specifically, it was believed that FmHA had a secured interest in the Dorns' farm land at that time amounting to approximately $5,000.00.

In February of 1983, the Dorns' farm equipment was sold and the net proceeds of $3,714.75 were applied to the 1980 loan, leaving FmHA unsecured on the remaining balance of approximately $32,000.00. Also, in February of 1983, pursuant to an Order of the Bankruptcy Court, the Trustee paid FmHA $1,500.00 in rent payments, which was to be applied against the indebtedness secured by the mortgage (the 1979 loan). From these monies FmHA paid the Sumter County Treasurer $84.33 for taxes, leaving them with net proceeds of $1,415.67. In April of 1983 FmHA received $1,438.51 in net rent proceeds from the Debtors' attorney, which were to be applied to the 1979 loan. This payment was incorrectly applied to the 1980 loan.

In August of 1983, after the Dorns had entered into a contract to sell their farm land, FmHA, without notice to anyone, reapplied all payments credited to the 1979 loan to the 1980 loan, leaving a balance due on the 1979 loan in excess of $17,000.00. Thereafter, FmHA claimed a secured status in the farm land in that amount. Prior to this reapplication and the misapplication of the rent proceeds, the Dorns, their creditors, the Trustee and the Court believed that FmHA's secured interest in the farm land was less than $3,000.00, leaving most of the equity available for the unsecured creditors. By virtue of the misapplication of the rent and the reapplications effected in August of 1983, FmHA improved its secured position by $15,000.00 to the detriment of the unsecured creditors. The Debtors objected.

A hearing was held in this matter on November 3, 1983. At that hearing the Debtors presented the factual background, confirmed by pleadings and records submitted to the Court and the Trustee. The FmHA presented the testimony of Paul Booth, County Supervisor for FmHA's Sumter office. Mr. Booth testified that the application of the payments of $10,886.29 and $600.00 to the 1979 loan had been erroneous and contrary to regulations, and that the $1,500.00 payment received in February of 1983 and credited originally to the 1979 loan was from the sale of farm equipment, and under FmHA's regulations should have been credited to the 1980 loan. [The record reveals no payment of $1,500.00 to FmHA in February of 1983, except the Trustee's payment of rent monies.] Mr. Booth testified that the 1980 loan was an operating loan and under FmHA's regulations all payments received should be applied first to operating loans and then to loans such as the 1979 loan which are amortized over several years. C & S Bank objected to FmHA's application of funds on the basis that the Dorns' creditors had relied upon the FmHA's Statement of Account at the time that the Dorn's Plan was formulated.

Subsequent to this hearing, FmHA submitted copies of the Federal Regulation dealing with the application of payments. FmHA apparently bases its contention that all payments should have been applied to the 1980 operating loan on the provisions of 7 C.F.R. § 1951.9(a)(1)(i) which are as follows:

(a) **Distribution of regular payments** (1) when a borrower owes more than one type of FmHA loan, regular payments received **from each crop year's income** will be distributed in accordance with the following priorities:

(i) **First,** to an amount equal to any advances made by FmHA for the crop year's living and operating expenses. If no advances were made, distribute the payment according to § 1951.9(a)(1)(ii). If the amount of the payment was greater than the amount of any advances, the excess should be distributed according to § 1951.9(a)(1)(ii).

However, § 1951.9(a)(3) provides:

(3) Payments will be distributed differently than the priorities provided in this section if accounts are out of balance or if a different distribution is needed to protect the Government's interest.

After reviewing the record, I make the following findings and conclusions:

### I

The 1980 payments of $10,886.29 and $600.00 were originally applied against the 1979 loan of $15,640.00, which was secured by a mortgage on real estate and a security interest in farm equipment. This loan was amortized over seven years and had an interest rate of 3 percent. FmHA now claims this application was erroneous and under 7 C.F.R. § 1951.9(a)(1)(i) should have been applied to the 1980 operating loan which bore interest at 10.5 percent.

 I find and conclude that under the provisions of 7 C.F.R. § 1951.9(a)(3), FmHA had discretion to apply payments other than under the priorities of § 1591.9(a)(1)(i) if such application were to protect the Government's interest. At the time of the original application of these funds the Government foresaw no risk to repayment under either the 1979 loan or the 1980 loan. By applying payments first to the 1979 loan, FmHA would satisfy the lower interest bearing loan first and gain an advantage of approximately $7.50 per $100.00 per year in earned interest. From this prospective the Government's interest was best protected and furthered by applying all payments first to the 1979 loan. The FmHA had the discretion to make this application. Only after the application was made, did it become apparent that the 1980 loan would not be repaid and its security

would be insufficient. By this time the Court, Trustee and creditors had all relied upon the Statement of Account showing both payments credited to the 1979 loan. To allow FmHA to now shift these payments to the 1980 loan would be unjust and inequitable.

### II

 The two payments from the rent proceeds ($1,500.00 and $1,438.51) were made after the commencement of the bankruptcy. These payments were made pursuant to an Order of the Court that the rent proceeds be paid first to the real estate taxes and then to the holder of the mortgage on the property. It was the expectation of the Court and the parties that the net rent payments would be applied against the mortgage indebtedness (the 1979 loan). Therefore, pursuant to the Court's order $1,415.67 of the $1,500.00 payment should have been credited to the 1979 loan along with the net payment of $1,438.51.

### CONCLUSION

Upon considering the foregoing facts and law, the Court concludes:

1. The original application of $10,886.29 and $600.00 to the 1979 loan was within the discretion of FmHA, this application was relied upon by the Court and creditors prior to formulating the Dorns' Plan and any reapplication would be unjust and inequitable.

2. The net proceeds of the rent payments ($1,415.67 and $1,438.51) should be applied to the 1979 loan in accordance with the Court's previous directions.

### ORDER

IT IS ORDERED that the objection of the Debtors to FmHA's application of funds is sustained. The $10,886.29, $600.00, $1,415.67 and $1,438.51 payments are all to be credited to the 1979 loan as of the date of their payment. FmHA will make the necessary bookkeeping entries to carry out this order and will furnish the Trustee a

revised Statement of Account showing the correct balance due on the 1979 and 1980 loans within thirty (30) days. Once these corrections are properly made in accordance with this Order, the Trustee will pay FmHA the balance due on the 1979 loan from the funds he now holds in escrow from the sale of the farm land.

SO ORDERED.